FOREST SERVICE MANUAL
WASHINGTON

TITLE 2800 - MINERALS AND GEOLOGY

Amendment No. 2800-90-2

Effective July 16, 1990

POSTING NOTICE. Amendments to this title are numbered consecutively. Post by document name. Remove entire document and replace with this amendment. Retain this transmittal as the first page of this document.

| Document Name | Superseded (Number of Pages) | New |
|---|---|---|
| 2817.2-2819.3 | 17 | 19 |

Digest:

This is a technical amendment, adding appropriate references in the chapter for exhibits that exist in paper copy only and reinstating those exhibits which were removed by Amendment No. 2800-90-1.

NOTE: Page 19 is in paper copy only. This is an exhibit to be posted at the end of the chapter. To see copy of this exhibit, see your unit's Master Set of the Forest Service Manual.

2810 Exhibit (paper copy only) is listed below:

2819.3 Exhibit01

F. DALE ROBERTSON
Chief

FSM 2800 - MINERALS AND GEOLOGY

WO AMENDMENT 2800-90-2
EFFECTIVE 7/16/90

2817.2 - Plan of Operations. A written plan of operations is required from all operators who will likely cause a significant disturbance of surface resources. Plans involving mining claims

OPP. EX. 4

subject to 30 U.S.C. 612 are also subject to the restrictions of that act, and those restrictions should be incorporated in the approved plan. The plan must be submitted to the District Ranger.

2817.21 - Requirements Within Plan. To properly serve its intended purpose, the proposed plan of operations must include the following information. Frequently needed information, but not required by the regulations, is enclosed in double parentheses.

1. Name, legal address and ((telephone number)) of the operator and of any lessees, assigns, or designees ((and their duly appointed field representatives)).

2. Names, legal mailing addresses, and ((telephone numbers)) of all owners other than the operator.

3. ((Name of mining district or mineralized area; and name of Claim(s) and/or property(ies) on which operation(s) will take place or will be based)).

4. A location map of appropriate scale to show the general area in which operations will take place (location of claim(s) and/or property) and proposed route of access. In general, a Forest recreation map should be adequate.

5. A surface disturbance map of the area within which onsite and offsite surface resource disturbing activities will, or could, take place. The scale and accuracy of the map must be adequate to permit identification of the site on the ground. A Geological Survey 7-1/2 minute topographic quadrangle map or its equivalent will suffice in most cases and should be tied to the general area location map.

6. The probable beginning and ending dates within which the proposed operation will be conducted ((and, when appropriate, whether the operation will be intermittent or continuing)).

7. The type and magnitude of the proposed operations. This should be documented and closely tied to the information on the maps. The Forest Service will require sufficiently detailed information, especially on earthmoving and site clearance operations, to identify the precautions which the operator needs to take to reasonably prevent and/or minimize adverse environmental impacts on National Forest surfaces during and after the proposed operations.

8. Plans for reclamation of disturbed areas not required for further operations and for erosion control, including provisions for filling excavations, grading of spoil banks, blocking of access roads, reseeding areas, etc. Although improvement of surface resource conditions, above those existing prior to the mining operations or preparations for future use, are desirable goals, they cannot be forced on operators as an added cost.

2817.22 - Proprietary Information. Proprietary information generally will be required only for determining the reasonableness of proposed operations. Access to, interpretation, and evaluation of necessary information identified as proprietary and secret by the operator should be on a need-to-know basis insofar as Forest Service personnel are concerned. Generally, Forest Service mining experts are best qualified to evaluate such data, and insofar as possible the information should remain under the operator's control. When, at the request of the Forest Service, the operator includes and identifies such information in a proposed operating plan, said information should be labeled "For official use only" and kept

securely and separate from the rest of the operating plan.

Common types of proprietary information may include geological and geophysical interpretations, maps and directly related interpretations, other data relating to the competitive rights of the operator, and privileged commercial and financial information.

When the public requests an operating plan, a determination must be made as to whether or not the plan contains proprietary information which must be withheld. The date of the information is relevant to this determination. Trade secrets or privileged commercial or financial information will ordinarily not be disclosed if disclosures is (1) likely to cause substantial harm to the competitive position of the party from which it was obtained or (2) if furnished voluntarily, is likely to impair the Government's ability to obtain further information (FSM 6271.1).

2817.23 - Review and Approval of Plans. When possible, the authorized officer or duly appointed representative shall review the plan of operations with the operator, on a person-to-person basis, to facilitate joint development of a reasonable agreement relative to the proposed operations. Consistent with the objectives in FSM 2817.02, negotiations may be needed to effect changes in the proposed operations in order to avoid unnecessary surface resource damage but without undue interference with the proposed operation. This may, in turn, reduce the amount of the surety bond which the operator must file with the appropriate Regional Director of Fiscal and Accounting Management before the plan of operations is approved. In some cases, the operator and authorized officer may be able to totally eliminate the bond requirement.

The authorized officer must be fair, reasonable, and consistent in reviewing plans of operations and in determining the need for and amount of bonds required for reclamation purposes. Furthermore, the authorized officer shall bear in mind that the Forest Service function is the management and protection of surface resources in a manner compatible with reasonable and logical mining operations and not the management of mineral resources. In evaluating a proposed operating plan the authorized officer is expected to utilize mining geologists, mineral examiners, civil engineers, hydrologists, foresters, fisheries and wildlife biologists, cultural resource specialists, and landscape architects, where and when necessary.

Within 30 days after receipt of a plan of operations which meets the requirements of 36 CFR 228 Subpart A, the authorized officer shall review the plan, prepare an environmental analysis according to instructions in FSM 1950, and notify the operator that the operating plan is:

1. Not required. (Plan of operations will serve as "Notice of Intention to Operate.")

2. Approved.

3. In need of changes or additions (to be specified).

4. Being reviewed, but that more time is necessary (for specified reasons) to complete the review. (Up to 60 additional days are allowed, but days during which the area of operations are inaccessible for inspection are not included when computing the 60-day period.)

5. Such that approval must be deferred until a final environmental statement has been prepared and filed by the Forest Service with the Council of Environmental Quality as provided in



PE-10-177

36 CFR 228.4(f) (FSM 1950).

6. Cannot be approved because the area is not open to location and entry under the 1872 mining law.

In items 3, 4, and 5, pending approval of the plan, the authorized officer must approve any operation which will meet the environmental protection requirements of the regulations and which must be completed in order for the operator to comply with Federal and State laws.

Approval of a plan of operations by the Forest Service shall be accompanied by the following statements:

> Approval of this operating plan does not constitute recognition or certification of ownership by any person named as owner herein.
>
> Approval of this operating plan does not constitute now or in the future recognition or certification of the validity of any mining claim to which it may relate or to the mineral character of the land on which it lies.

2817.24 - Bonds. Prior to approval of a plan of operation, the operator may be required to furnish a guarantee to perform reclamation work in an amount equal to the estimated cost of that work. Guarantee may be in the form of approved surety bonds, cash bond, or irrevocable letter of credit. If security in lieu of surety bond is received, the security will be sent to the Regional Director of Fiscal Management (FSM 6506.62). If the guarantee is cash, the check or money order should be drawn payable to the Forest Service, U.S. Department of Agriculture. If a surety bond is submitted, the surety must be among those appearing on the quarterly list of acceptable sureties furnished by the Treasury Department and authorized to do business in the State in which the operation occurs.

Whenever a bond furnished under an approved plan of operations shall be found unsatisfactory, a new bond that is satisfactory must be furnished within 15 days from the date the operator is notified that the bond in question is not satisfactory.

The release of the surety bond or equivalent cash deposits is conditioned upon the Forest Service's acceptance of the operator's reclamation of the disturbed surface resources in accordance with 36 CFR 228.8(g).

The authorized Forest Service officer will, in writing, promptly relieve the operator from any further reclamation responsibilities on those areas on which such reclamation requirements agreed upon in the approved plan of operation have been completed and accepted by the Forest Service. This may occur piecemeal, if the reclamation takes place in approved stages.

All reasonable effort should be made, through agreements with States which require bonds for reclamation disturbances in National Forests, to avoid double bonding.

2817.25 - Access. "Access," as used in 36 CFR 228 Subpart A, is limited to operations under the 1872 mining law and refers to means of ingress and egress, such as roads, trails, bridges, tramways, and landing fields for aircraft. It refers also to modes of transport, such as any type of wheeled or tracked vehicle, whether used on or off roads; to any type of aircraft and boat; and to saddle and pack animals. Access to patented mining claims, mineral leases, and private property inholdings

are not subject to 36 CFR 228 Subpart A nor to the access provisions as discussed herein.

Not all means or modes of access in connection with operations under the 1872 mining law require advance approval. (36 CFR 228.4(a) and 228.12).

Any person prospecting, locating and developing mineral resources in National Forest System lands under the 1872 mining law has a right of access for those purposes. Such persons need not have located a mining claim to exercise that right.

The operating plan requirements of the 1872 Act Use Regulations (36 CFR 228.4, 228.8, 228.12) provide for reasonable protection of surface resources, whether on or off mining claims and including access. Approval of an operating plan includes approval of the means of access and modes of transport described in the plan. Road construction or restoration on mining claims covered by an operating plan requires no separate permit or written authorization and neither are subject to charge.

Construction or restoration of a road for access to a claim, or across National Forest System lands on which an operator has no mining claim, will be authorized by issuance of Form FS-2700-15, Special Use Permit (Road) under the procedures in FSM 2730. However, when an operating plan is required under 36 CFR 228.4(a), it must be approved prior to issuance of a special-use permit regulating access.

In accordance with FSM 2733, a charge will be made for a special-use permit regulating construction, reconstruction, or restoration of a road for access under the 1872 mining law when the road is for the exclusive use of the permittee and may be closed at the permittee's option to exclude the public and other permittees and licensees of the United States.

An approved operating plan is not required for use of vehicles on existing public roads and Forest Development Roads. However, use of existing Forest Development Roads is subject to the road regulations, 36 CFR 212, and to control in accordance with FSM 7770. Commercial hauling on existing roads will require a road use permit if the road is posted with this requirement under 36 CFR 212.7(a)(2). Such use may require deposits for maintenance or reconstruction work to accommodate the planned use. An operator must receive advance approval to use existing roads that have been closed by or with the approval of the Forest Service. Use of such closed roads may be authorized by approval of an operating plan; if no operating plan is required under 36 CFR 228.4(a), a special authorization must be obtained from the Forest Service.

Reasonably necessary use of vehicles off roads by persons operating under the 1872 mining law in areas closed to off road use of vehicles does not in itself require an operating plan, but a permit is required for such activity. An operating plan is required when such use will likely result in significant disturbance of surface resources. Operators intending to use vehicles off roads in areas closed to such use are required to file a notice of intent with the authorized officer.

Provisions in an operating plan for regulating means of access should be evaluated in comparison with existing criteria in the FSM governing similar uses for other purposes. This will help maintain consistent treatment of National Forest System users.

The Forest Service is not obligated to approve, or to issue a permit regulating access, if the proposed means of access or mode of transport is not reasonably necessary for the work to be

performed for prospecting, locating, and developing mineral resources. An operator who proposes means or modes of access that will result in significant disturbance of surface resources will be required to justify the proposal. Forest Service minerals geologists or mineral examiners should be consulted in evaluating such justification. The primary consideration is that the means and modes of access must be reasonably necessary for the particular situation. Road building, for instance, should no longer be condoned or accepted simply to satisfy the first year's assessment requirements or to get a bulldozer to a claim so that baseless "discovery" cuts can be made that are not justified by actual mineral evidence. Following are guides to help in judging whether certain modes of access are reasonably necessary:

1. Construction of a road will not ordinarily be necessary for:

a. The mere acts of locating and establishing the boundaries of mining claims.

b. Geologic mapping, surface sampling (including geochemical) and most geophysical work.

c. Bulldozer work of minor scope that may be justifiable for surface mapping and sampling on mining claims, but the terrain is such that a road is not needed to get the equipment to the site.

d. Moving drills, accessory equipment and personnel to drill sites if the terrain is such that a road is not needed.

2. Road construction, reconstruction or restoration may ordinarily be justifiable for:

a. Controlling and mitigating surface resource disturbance when there is an intensive drilling program involving a number of drills or frequent passage of personnel, supply trucks, water trucks, and similar repetitive travel.

b. Underground exploration and development work requiring frequent access to the property for personnel, equipment and supplies.

3. Under some circumstances, pack animals, helicopters, even boats, might be justifiable alternative modes of transport.

4. Items 1, 2, and 3 apply mostly to mineral exploration. Development, construction and operations of mines, mills, and related facilities will usually require good road access.

Evaluations of proposals for construction, reconstruction or restoration of roads should include possible alternatives. Construction to a different standard than proposed, or of a different means of access, or other modes of transport may in some situations prove less damaging to surface resources and still serve the intended purpose as well or better without adding unbearable or unjustifiable economic burdens on the operator.

2817.26 - Operations in Wilderness. FSM 2323.7 through 2323.72 cover prospecting and mining in wilderness under the authority of the mining laws. Where those directives require permits or other authorization for prospecting, mining and associated uses, the operating plan required by 36 CFR 228 Subpart A, and by this chapter will meet those requirements. The operating plans will include provisions protection and management of surface resources, environment and wilderness character.

The sensitive nature of wilderness requires an approved operating plan for those operations in wildernesses. Those activities otherwise generally prohibited within wilderness--including the use of mechanized transport, aircraft, or motorized equipment--shall be authorized only when proven to be the best management practice and to be essential (36 CFR 228.15(b)). An approved operation plan shall serve as authorization for such otherwise prohibited activities on mining claims in Wilderness.

Access across wilderness to a claim or to areas in which an operator has no mining claims, which will result in any disturbance of surface resources or which is otherwise generally prohibited by the Wilderness Act, shall be authorized only by issuance of a special-use permit (FSM 2817.25).

2817.3 - Inspection and Noncompliance

1. Under Approved Operating Plan. When activities are being conducted under an approved operating plan, regular compliance inspections must be conducted to ensure reasonable conformity to the plan and to guard against unforeseen detrimental effects. The frequency, intensity, and complexity of inspection shall be commensurate with the potential for irreparable and unreasonable damage to surface resources.

2. Without Operating Plan. When operations are being conducted without an operating plan because it was determined none was required, the need for regular inspections shall be determined on a case-by-case basis. Timely inspections shall help assure conformance to the environmental protection requirements of the regulations, as well as identify operations that vary from those described in the notice of intention and which may require an operating plan.

3. Detection. Forest officers shall make note of, and report all operations for which there have not been submitted either notices of intention to operate or operating plans. Such operations shall be identified and inspected as soon as practicable to determine if a plan of operations or a notice of intent is required.

4. Inspector Qualifications. Inspection shall be conducted by Forest officers who are familiar with the equipment and methods needed to find and produce minerals and who can accurately assess the significance of surface resource disturbance. Inspectors should be capable of identifying those activities of an operator which are reasonably necessary to the operation, which ones could perhaps be done differently with less effect on surface resources without endangering or hindering the operation, and which ones are unreasonable or unnecessary.

5. Noncompliance. Wherever practicable, acts of noncompliance should be discussed with the operator, either in person or by telephone, in an attempt to secure willing and rapid correction of the noncompliance. Such discussions shall be made a matter of record in the operator's case file. Where the operator fails to take prompt action to comply and the noncompliance is unnecessarily or unreasonably causing injury, loss or damage to surface resources, the authorized officer must take prompt noncompliance action. For direction to resolve unauthorized residential occupancy on mining claims. See FSM 2818.

a. Notice of Noncompliance. The first step in any noncompliance action is to serve a written notice of noncompliance to the operator or the operator's agent, in person, by telegram, or by certified mail. This notice must

include a description of the objectionable or unapproved activity, an explanation of what must be done to bring the operation into compliance, and a reasonable time period within which compliance must be obtained. Continued refusal of the operator to comply after notice will usually require enforcement action.

b. Enforcement Action. Civil or criminal enforcement, or a combination of both, are available for enforcement of 36 CFR 228. The decision on which procedure, or combination, to use shall depend upon the particular facts in each case and the probability of success and possible consequences. The Regional mineral staff or the local Office of General Counsel shall be consulted for advice prior to any enforcement action to ensure consistency and conformance with mineral law and regulation. The appropriate U.S. Attorney shall be consulted to coordinate the criminal and civil actions.

(1) Civil Action. Two types of civil relief in Federal District Court are available: damage recovery and injunctive. An action to recover costs of repairing damages or to compensate for irreparable damages would be appropriate for those cases where such damages have already occurred and no further operations were being conducted or likely to be conducted. Such damage suits require extended periods of time for completion. Injunctive relief can be obtained quickly when the facts of a particular case warrant such action. There must be strong justification that the party requesting relief is suffering or will suffer irreparable harm and that harm must usually be incompensible. Moreover, it must be likely that the complainant will actually succeed on the merits of the case.

(2) Criminal Action. In cases where unnecessary and unreasonable damage is occurring and where reasonable attempts fail to obtain an operating plan or to secure compliance with an approved operating plan, the operator may be cited for violation of the appropriate section of 36 CFR 261 or 262, according to existing delegation of authority.

2818 - OCCUPANCY ON MINING CLAIMS. One of the most difficult problems of the Forest Service in regard to minerals is that of unauthorized residential occupancy on mining claims. The problem arises primarily out of (1) imprecision in the law regarding occupancy, (2) historical laxity of the Government in taking action against suspected unauthorized occupancy, and (3) the difficulty in legally determining intent, which is at the heart of the issue. The basis of the occupancy issue is the 1872 Act which states, "Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, . . . shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, . . ." (30 U.S.C. 22). The meaning of that statute has been broadened and clarified by court decisions and legal interpretations. For example, it is generally accepted that a claimant to an unpatented mining claim is entitled to uses of the surface that are reasonably necessary to the accomplishment of bona fide prospecting, exploration, mining, and processing of locatable minerals. On the other hand, it follows that a claimant to an unpatented claim is not entitled to certain uses of the surface where such uses are not reasonably necessary or where the claimant is not actually involved in bona fide minerals-related activities.

In order for structures, including residences, to be authorized under the United States mining laws and laws requiring the management of surface resources, two conditions must be met. First, the structure must be reasonably necessary for use in prospecting, mining, or processing of locatable mineral resources

and, second, the structure must be covered by an approved operating plan or special use permit. Generally, a structure is not necessary for annual assessment work.

2818.03 - Policy. The Forest Service must prevent and eliminate unauthorized use and occupancy of National Forest System lands.

2818.1 - Actions Under 1872 Act Use Regulations. The regulations (36 CFR 228 Subpart A) provide a logical and effective means of controlling new occupancy problems through the requirements for an operating plan. If the mining laws are used as justification for a new structure, the structure must be covered in an approved operating plan, in which the reasonable necessity is explained--unless the structure is authorized by a special use permit due to other considerations.

The necessity for structures in regard to mineral activities depends upon several factors: (1) The stage of mineral activities, (2) the expected size and life of the proposed operations, (3) the remoteness of the site, (4) the amount and kind of equipment requiring protection and storage, etc. For example, a tool-storage structure may be a reasonable necessity if the plan of operations is for a long period of active exploration or development, and it is inconvenient to transport tools to and from the claim. On the other hand, a residence will not be necessary to conduct minimal assessment work on a mere indication of mineral. The area of operations will seldom be so remote, or other "needs" so compelling, as to justify residential occupancy on the claim.

When it appears that residential occupancy is--or will be--an issue on an unpatented claim, the District Ranger shall take timely action to inform the claimant in writing of (1) rights regarding use and occupancy, (2) the requirements of 36 CFR 228 Subpart A, and (3) the Forest Service responsibility for surface resource management and protection. Exhibit 1 is a sample letter for this purpose. The claimant will be encouraged to demonstrate the facts, reasons, and purpose for use or occupancy. The Forest Service will make a diligent effort to resolve differences through agreement and will document all communications and actions relative to the above requirements.

Except in the most clear cut cases, the District Ranger should request advice of the Regional Mineral Examiner when evaluating an operating plan in which a structure is proposed which could be used as a residence.

As stated in FSM 2817.03, willing cooperation will be sought, but legal remedies are available through the Department of Justice.

CERTIFIED MAIL--RETURN RECEIPT REQUESTED 2810
(Date)

(Name and address of claimant)

Dear :

(Introductory statement)
. As District Ranger, I must inform you of Forest Service policy regarding mining activity and uses of the surface on a mining claim.

The mining laws give the public the right to prospect and to locate and claim valuable mineral deposits which they may discover on certain lands. On the other hand, the mining laws prohibit a claimant from using unpatented mining claims for purposes other than for mineral-related activities. Forest

Service policy is to encourage bona fide prospecting and mining and to allow uses that are reasonably necessary for these purposes, but we must oppose unauthorized uses of a claim. This policy applies to the use of claims for residences. If we determine that a claim is being used for unauthorized uses, we are required by law to take steps to end such uses.

The Federal regulations found in 36 CFR 228 Subpart A provide procedures to follow regarding mineral related activities under the mining laws on National Forest lands. Specifically they require that any activity by an operator which might cause significant surface resource disturbance must be conducted according to a plan of operations approved by the Forest Officer. (Your cabin) (Any structure which you may plan to build) (The building which you have under construction) must be covered by such a plan of operations. In order for that structure to be authorized under a plan, you must be able to show a reasonable necessity resulting from planned prospecting, exploration, or mining activities. If you have any questions about the requirements of a plan of operations or the justification for a structure, please come to see us so we can discuss it.

Sincerely,

District Ranger

2818.2 - Uninhabitable Cabin on Mining Claim. An uninhabitable cabin on National Forest land is an administrative problem, because it may easily be repaired and used for purposes unrelated to mining. The mining claimant may give permission to have the cabin removed when the claimant realizes that is represents a hazard to the administration of the area. Until an unoccupied cabin is removed, it is the Ranger's responsibility to question any activity involving its repair or use. If repairs are started on a cabin, the Ranger shall proceed as in FSM 2818.1.

2818.3 - Use of Validity Determinations. Historically, residential occupancies which appeared to be unauthorized under the mining laws have been resolved through the use of validity determinations by the Department of the Interior. Although the regulations in 36 CFR 228 Subpart A (available since 1974) are believed to be the best tool--ultimately--for preventing unauthorized uses, it is unlikely that the validity test procedure can be avoided in resolving existing trespass so long as the present mining laws are in operation.

The validity test is based on the legal concept that a mining claim is not valid without a discovery of a valuable mineral deposit. The regulations (43 CFR 3831.1) state that "Rights to mineral lands, owned by the United States, are initiated by prospecting for minerals thereon, and upon the discovery of minerals, by locating the lands upon which such discovery has been made." The order of action by regulation is (1) prospecting, (2) discovery, and (3) location of a claim. This procedure entitles the claimant to the minerals discovered, the right to mine them, and, under certain circumstances, the right to a patent to the surface of the claim. Prior to obtaining a patent, a claimant's rights on the land are limited to those reasonably necessary in connection with prospecting, mining, or processing operations. Prior to a discovery, a claim cannot be valid.

In practice, most claims are staked and located prior to discovery on the basis of a prospect or mere indication of a mineral deposit. This practice protects the claimant's rights

from other prospectors, but it does not grant any rights against the United States. Department of the Interior decisions have upheld the right of a claimant to hold and work a claim prior to "discovery," provided the claimant is diligently seeking a discovery on a promising prospect. However, it remains a legal fact that a claim is not, and cannot be, valid prior to the discovery of a valuable mineral deposit.

Accordingly, if a claim is found to lack a discovery of a valuable mineral deposit by the Department of the Interior or in a Federal court, the claim is null and void. The Forest Service then is in a better position in trespass actions against a claimant for unauthorized residences or other uses. While, in fact, a claimant with a valid discovery does not have more surface rights than one without a valid discovery, judges have tended to depend heavily on validity findings because of the implications of good faith of the claimant.

2818.31 - Initial Procedures. If the District Ranger is unable to resolve an occupancy problem through the provisions of 36 CFR 228 Subpart A, (FSM 2818.1), the District Ranger shall initiate procedures for a contest by submitting to the Regional Forester Form FS-2800-4, Request for Mineral Examination--Mining Location. The request shall include a statement regarding impacts on National Forest resources which construction or use of structures has caused or will cause. Following the mineral examination, the Forest Supervisor shall proceed as directed under FSM 2818.32 or 2818.33, as applicable.

The Forest Service mineral examiner does not determine the validity of a claim. The mineral examiner gathers evidence to use in a possible mining claim contest. Validity is usually decided through contest proceedings before the Department of the Interior.

2818.32 - Mineral Examiner's Report Indicates Claim Is Valid. If the Report of Mineral Examination indicates the claim is valid, there is no value in proceeding further with validity proceedings. Further actions, if necessary, must be based on procedures under FSM 2818.1.

2818.33 - Mineral Examiner's Report Indicates Claim Is Not Valid. If the Report of Mineral Examination indicates the claim is not valid, the procedure to be followed will depend on circumstances. The following descriptions of possible situations are guides to assist the Forest Supervisor in developing a proper course of action.

1. If the unauthorized use consists of a residence or other structure which is not necessary for mineral operations, the District Ranger shall request the claimant to remove the structure. Exhibit 1 is a sample letter. If the claimant refuses to comply with this written request, the Forest Supervisor should ask the Regional Forester to initiate proceedings to challenge the validity of the claim.

2. If it is apparent that a structure is to be built, the District Ranger will advise the claimant not to proceed (ex. 2). If the claimant starts or continues construction, the Forest Supervisor should submit a statement to the Regional Forester regarding impacts on National Forest System resources and request that the Regional Forester initiate action to challenge the validity of the claim.

3. Where immediate termination of the use of an unauthorized structure would cause undue hardship on the user, issuance of a special-use permit may be considered. Factors to consider in judging whether a special-use permit is warranted may include:

a. Conflict with other uses of the land,

b. Conflict with existing or proposed land management plans,

c. The period of time that the use has had to amortize investment in the structure.

Exhibit 1

CERTIFIED MAIL--RETURN RECEIPT REQUESTED 2810
(Date)

(Name and address of claimant)

Dear :

I have received the mineral examiner's report for your (Name of claim) mining claim. This report was prepared by , a qualified mineral examiner, after an examination of your claim on (date) . Mr. (Ms.) 's examination failed to disclose sufficient mineralization to convince him (her) that the claim is valid under the United States mining laws.

Under the mining laws of the United States, a discovery of a valuable mineral deposit is required before a mining claim can be valid. A claimant can have no rights against the United States on an invalid claim.

Based on Mr. (Ms.) 's examination, it is the opinion of the Forest Service that your claim is not valid, and since your (cabin) (structure) is not authorized by a plan of operations (36 CFR 228.4) for special-use permit (36 CFR 251) it constitutes a continuing trespass on National Forest System land. Under Federal Regulations, the Forest Service is obligated to take steps to stop such a trespass. I must, therefore, ask you to remove your (cabin) (structure) from National Forest land by (reasonable date). If you do not comply, the Forest Service will proceed to contest the validity of your claim before the Bureau of Land Management. You will have an opportunity in a hearing to present evidence in opposition to the Forest Service to show that your claim is valid.

Sincerely,

District Ranger

Exhibit 2

CERTIFIED MAIL--RETURN RECEIPT REQUESTED 2810
(Date)

(Name and address of claimant)

Dear :

I have received the mineral examiner's report for your (Name of claim) mining claim. This report was prepared by , a qualified mineral examiner, after an examination of your claim on (date) . Mr. (Ms.) 's examination failed to disclose sufficient mineralization to convince him (her) that the claim is valid under the United States mining laws.

Under the mining laws of the United States, a discovery of a valuable mineral deposit is required before a mining claim can be valid. A claimant can have no rights against the United States on an invalid claim.

Since a (cabin) (other structure) is not necessary for mineral activities on your claim under the mining laws, and is not covered by an approved operating plan (36 CFR 228.4) or special-use permit (36 CFR 251), construction of such a structure would constitute an unauthorized use on National Forest land. I request that you (stop construction activity). If you do not, the Forest Service will proceed to contest the validity of your claim before the Bureau of Land Management. You will have an opportunity in a hearing to present evidence in opposition to the Forest Service to show that your claim is valid.

Sincerely,

District Ranger

2818.4 - Resuming Action After Null and Void Decision. Upon being notified that a Department of the Interior decision declaring the claim null and void has become final, the Forest Supervisor should resume action to resolve an unauthorized occupancy, as follows:

1. Buildings on a mining claim that have been successfully contested and declared null and void will be locked and posted as Government property.

2. The former owner(s) will be notified by certified mail (exhibit 1) or in person that the owner has a specific time period to remove the structure and personal belongings if so desired. The notice will identify the date on which the Government (Forest Service) will dispose of the remaining structures and belongings and will include a consent form for the owner(s) signature.

3. Ten days prior to Forest Service disposal of the remaining structures and impoundment of personal belongings, a certified letter will be sent to the former owner(s) stating what action is to be taken and when (36 CFR 262.4).

4. No response to the above two notices by the owner(s) will be considered as a consent to the proposed action.

5. The Office of the General Counsel will be consulted prior to actual Forest Service removal, disposal, and impoundment. No action will be taken until OGC review and advice has been received.

6. There will be some cases where the above procedure will be appealed, protested, or occupancy continued. Additional attempts will be made to stop the unauthorized occupancy through further contacts with the individual. As soon as it becomes evident that a negotiated relinquishment cannot be obtained, the procedures to obtain a court order should be initiated (FSM 2819.3).

Exhibit 1

CERTIFIED MAIL--RETURN RECEIPT REQUESTED 2810
(Date)

(Name and address of claimant)

Dear :

The final decision in Contest No. declared your (Name of claim) to be null and void. The building(s) on the former claim, thus, become the property of the United States unless promptly removed.

You are hereby notified that you have until to remove the building and personal property from the land. Should you wish to enter the building(s) for the above purpose, you may obtain a key from this office. It will be assumed that anything remaining on the land after the above date has been abandoned to the United States.

On , the remaining structure(s) and property will be disposed of by sale or other appropriate means (36 CFR 262.4).

Sincerely,

District Ranger

2818.5 - Rights to Preexisting Improvements. Structures on any mining claim determined to be invalid by a final decision of either the Department of the Interior, or a court, which structures were placed on the land by an owner of such mining claim, are the property of the United States, subject only to the right of the last owner of the mining claim, or assignee, to remove them within a reasonable time. This also applies to personal property within a structure, the structure itself if not attached to the land, and associated personal property on the claim area. All such personal property may be impounded pursuant to 36 CFR 262.4. These rules may not apply if there is a written agreement specifically covering the property. Real property on a mining claim which has not been placed there by an owner of the existing mining claim, or which has been formally abandoned, is the property of the United States in the absence of a written agreement which recognizes ownership in a non-federal party.

2819 - MINING CLAIM CONTESTS. The mining laws are comprised of two parts: (1) the statutes themselves, which are general in nature; and (2) the decisions of the courts and of the Department of the Interior, which interpret and apply the statutes to specific cases. In considering whether to contest the validity

of a mining claim or to challenge questionable mining claim occupancy and use, the Forest Service is guided by the pertinent statutes and decisions.

No adjudicative power has been given to the Forest Service. Thus statements about validity, occupancy, and use are statements of belief and not formal determinations. The conclusions reached by a Forest Service mineral examiner are based on physical facts interpreted in the light of professional expertise. Consistent with those conclusions and beliefs the Forest Service will attempt to resolve conflicts without resort to legal action. If those attempts are unsuccessful, appropriate legal action is required. The facts should be referred to the Office of the General Counsel before deciding if legal action is appropriate.

2819.1 - Forest Service Role

1. Request for Mineral Examination. When administrative problems of a mineral nature arise or unauthorized use of a mining claim is believed to exist which cannot be satisfactorily resolved, the District Ranger should submit a request to the Regional Office via the Forest Supervisor on Form FS-2800-4, Request for Mineral Examination--Mining Location. A Forest Service mineral examiner, who has been properly authorized, may go on an unpatented mining claim to make a mineral investigation. Every effort should be made for amicable entry and examination of the claims, preferably accompanied by the mining claimant or the claimant's duly appointed representative.

2. Use of Force. If the mining claimant threatens or uses force to prevent the mineral examiner from going on the land, the Forest Supervisor and Regional Office should be notified. If the Forest is unable to get the claimant to agree to the examination, it may be necessary to work through the U.S. Attorney to secure the participation and protection of a U.S. Marshal.

3. Report of Mineral Examination. The mineral examiner's findings, conclusions, recommendations, together with pictures and maps, will be compiled in a Report of Mineral Examination, which will be sent to the Regional Office for technical review and approval by the Regional MineralExaminer. This report will be the basis for a decision on whether or not to contest the claim. In situations where the mineral examiner's conclusions are urgently needed, the examiner will, when possible, inform the District Ranger at the time of examination or soon thereafter.

4. Problem Resolution. Concerted effort should be made to resolve problems, or terminate unauthorized use, through reasoning, persuasion, and agreement. The knowledge that, in the opinion of a Forest Service mineral examiner, a claim is not valid can be of assistance in this respect. When this fails, contest action may be required.

2819.2 - Department of the Interior Role. Although adverse proceedings might be required for a variety of reasons, such as trespass, patent application, land classification, land clearance, etc., each case is initiated with a request from the Regional Forester that the Land Office issue a complaint. (Assuming, of course, that the claim is not supported by a verifiable discovery of a valuable mineral deposit and the action meets with the approval of the Regional Attorney.)

The most common legal action is a contest of claim validity which is conducted by and under the regulations of the Department of the Interior. To that Department, Congress has given adjudicative powers in matters relating to all the land laws, including the mining laws. The decision in a mining claim contest is a formal determination of validity. The authority of

the Department of the Interior to rule on claim validity was confirmed by the Supreme Court in Best v. Humboldt Placer Mining Co., 371 US 334 (1963).

2819.3 - Actions Before Magistrates and in Federal Court

1. Initiating Action. Action is initiated by the filing of a Forest Officer's sworn complaint with supporting affidavits (if appropriate), setting forth the nature of the offense. If probable cause appears, the complaint is followed by a summons to appear, or less frequently, a warrant of arrest. On arraignment, a not guilty plea is followed by trial. A guilty plea or decision can result in imprisonment or a fine. Typical mining claim related cases tried by magistrates have involved continuing occupancy after a mining claim is declared invalid, and off-claim road construction without a permit. Another sort of case which potentially could be tried is nonmineral occupancy of a claim, the validity of which has not been determined formally.

2. United States District Court. Numerous cases have been resolved in the Federal courts and will continue to be resolved there. Actions are initiated in the U.S. District Court and can be brought by claimants as well as by the United States.

3. Review. Suits by claimants generally seek review of decisions resulting from contests. Forest Service participation is extremely limited, since the review is to Department of the Interior decisions.

4. Action Flow. Exhibit 1 is a flowsheet of the normal route of action in mining claim contests.

SEE END OF THIS CHAPTER IN THE MASTER SET (PAPER COPY)
FOR 2819.3 EXHIBIT01
2819.3 - Exhibit01