9/24/07

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALFRED ALOISI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 95-650L |
| THE UNITED STATES, | ) | Judge Lawrence S. Margolis |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, 34 and 36 of the Rules of the United States Court of Federal Claims, Plaintiffs hereby respond to Defendant's Second Set of Interrogatories and Requests for Production of Documents (Defendant's "Second Set of Discovery") as follows:

**GENERAL OBJECTIONS AND OBJECTIONS TO DEFINITIONS**

1. Plaintiffs object to Defendant's Second Set of Discovery to the extent that it seeks irrelevant information and/or documents.

2. Plaintiffs object to Defendant's Second Set of Discovery to the extent it seeks information and/or documents that are protected by attorney-client privilege, work product doctrine, or any other applicable protection against disclosure.

3. Plaintiffs object to Defendant's Second Set of Discovery to the extent that it is overly broad, vague and ambiguous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

4. Plaintiffs object to overly broad and unduly burdensome definitions of terms, including pronouns, plural/singular, and entities/persons.



PE-20-276

mined apex ore stockpiled a haul distance from the mill.

(2) In 1989 during their approved operations, and prior to the January 4, 1990, Stop Work Order, plaintiffs began hauling ore from the Klamath Cut to Usher Flat, where it was stockpiled for milling. Plaintiffs do not contend there is any millable stockpile at Usher Flat now. During the life of the WAZCO Lease Agreement or LCM LOA, the lessee removed or wasted this ore. The lessee either hauled it to the Bowerman mill (but never reported production or paid royalty to plaintiffs), or wasted it in the course of blading the Usher Flat site and pouring the concrete mill foundation slab, or both.

(3) There are three stockpiles of apex ore from the Klamath Vein on the Sunrise lode claim: the first on the Dariel claim at the west end of the exposure of the Vein, at plaintiffs' KL-7 sample location; the second at the Klamath Cut near sample KL-1, and the third at the ridge pit near KL-6. This ore was mined and stockpiled in 1989 under plaintiffs' approved mining plan of operations prior to the Forest Service's Stop Work Order. The volumes of these stockpiles are specifically measured in the mapping in A-85 and A-86. The tonnage of these stockpiles is included in the economic evaluation with the additional not-yet-severed (excavated and piled) apex ore at the same locations. The unified tonnage and values of the mined (stockpiled) and un-mined apex ore at each of these sites are included in the September 2007 Ferrero Analysis (A-150), and on its Spreadsheets 4-9 (A-151).

INTERROGATORY NO. 10: Please identify:

a. any and all mining, milling and processing equipment that was in place and available for Plaintiffs' use upon the date of inception of the alleged temporary taking, including but not limited to any crushing, milling, screening, concentrating, and/or other ore processing equipment;

b. for each piece of equipment identified in response to 10.a., please state:

i. its precise location as of the date of taking;

ii. when each piece of equipment was purchased and/or leased;

iii. the name of the purchaser and/or lessee of the equipment;

iv. the seller or lessor of the equipment;

v. when each piece of equipment was transported to a milling site for processing ore extracted from the mining claims allegedly taken;

vi. the location of the milling site;

vii. whether the equipment was new or previously used when purchased or leased;

viii. any repairs or refurbishing necessary to make the equipment operational;

ix. the cost of each piece of equipment purchased or the rent paid under any lease;

x. the cost of transporting and setting in place the equipment;

xi. the cost of any repairs needed to make the equipment operational; and

xii. whether and, if so, when, any tests on the complete milling process were performed using the equipment identified in your response to 10.a.

**ANSWER No. 10**: To create a matrix responding discretely to each of twelve subparts of a subsection of one interrogatory would be unnecessarily burdensome and unnecessarily lengthen this Response. Plaintiffs respond to the substance of Defendant's request, individual piece of equipment by individual piece of equipment. As to Interrogatory 10.b.xii., plaintiffs did not erect the milling equipment – the Forest Service baselessly prohibited them from doing so. As the Forest Service prohibited the erection of the milling equipment, the Forest Service prohibited its being tested.

Some of the mining equipment on-site in 1990 was filmed in 1990 (A-73, voice on tape generally Don Moore; filmed at Rollin). This film does not show the gravity separation milling equipment then at the ET Placer Pit. The milling equipment not described below as having been

purchased by plaintiffs is described in document A-33, Don Moore's pricing sheet in early 1990 for the balance of the milling equipment.

1. (a) Two Tri-R Concentrators, (b) Cedar Rapids 5 by 15 Triple Deck Screen, (c) a 60 KW generator, and (d) 2 20-foot flatbed trailers – all purchased for $69,000 from BenCo (Steve Bennett, a principal with Aloisi in Jefferson State) in 1988; originally acquired by Jefferson State in 1986 and used in the ET Placer operation; this suit of equipment remained at the ET Placer site until 1992, when the Forest Service demanded its removal, at which point this equipment was moved to Rollin, where it is today; it was operational in 1989-1990 at the ET Placer site.

2. (a) one Bico pulverizer; (b) one Braun jaw crusher – bench scale (1/2 ton per hour) assaying equipment – purchased new for the operation in 1988-1989 for $6,000; on Rollin in 1989; still at Rollin.

3. Underground operations equipment suite: (a) Manchi Motor for underground "train," and battery and battery charger for the Manchi Motor; (b) five ore cars; (c) one underground mine flatcar; (d) 260 KW generator; and (e) Eimco 12B mucker – acquired in 1988-1989 used for $20,000 in exchange for forgiveness of debt owed Aloisi by Norman Haber; on the property in 1989; sold (except for the generator) to WAZCO (Gavard) in 1993, and removed from the property by LCM during its LOA, or upon termination of its LOA; generator sold for $13,000 to an equipment outfit in Portland, Oregon, by Jim Kendle in 1991.

4. Caterpillar D8H-46A, serial number 27123 – provided used by Don Goodman, direct costs to plaintiffs included $10,000 to truck to California and $20,000 in improvements (installation of parallel rippers and "U" blade from Steve Wilson Equipment); in use on-site in 1989 as primary apex ore excavation equipment; sold to Bob Johnson in 1998 or 1999 for $22,000; price new then approximately $250,000.

5. Caterpillar 950 rubber-tired loader – purchased used for $45,000 from an equipment supplier in Portland, Oregon; on-site and used in 1989 operations; sold for $17,000 to Bob Johnson in 1999 or 2000.

6. Two Terex T24 scrapers – purchased used for $65,000 from the same Portland equipment supplier; on-site and used in 1989 operations; sold for $7,500 (one operational, the other not at time of sale) to Jenner Ranch in 1998.

7. Caterpillar 977 tracked loader – acquired used by delivery from Don Goodman; $12,000 in refurbishing in 1989 by Steve Wilson (Medford), installing winch and forks; used in operations in 1989; returned to Wilson in 1991 for servicing, kept by Wilson for non-payment of servicing / repair charges.

8. Longyear 44 wire-line core drill and 1000 feet of steel core pipe, and accessories – cost $150,000 new in 1988; used in 1988-1989; when mounted on Mack Truck, used to drill sample hole at Union Mine underground target; seen in A-73 video cassette recording; was equipment in place for use in planned 1990 drilling in Mt. Laurel / Anna Johnson area, drilling work for which the Forest Service gave interim authorization in 1991 to plaintiffs to improve the road to the drill site, but never approved the actual drilling under interim authorization in 1991, as an exception to the Stop Work Order; sold for $65,000 of which only 16,000 was received in 1999-2000; traced to an equipment yard in the Sierra foothills later, and acquired by Andrew Edwards (Britannia Construction) of Ashland, Oregon, and used, mounted on a surplused Army truck, in plaintiffs' sampling plan test drilling in 2004, which penetrated underground mine voids in the Klamath Mine down-dip of the Klamath apex ore deposits here; now in Andrew Edwards' yard in Ashland, Oregon.

9. Forty foot truck and trailer – acquired for $7,500 used in 1988-89; used to haul

plaintiffs' cyanide vats from the Pima Mine to Don Moore's in Tucson, Arizona, awaiting shipment to the mine site; truck and trailer stored in Ashland and lost for rental.

10. Underground long-hole drill and drill steel (for underground drill core sampling), slusher and Detroit 250 (cfm) compressor – acquired for $3,000 from Ed Rutter in Winston, New Mexico in 1988; the compressor and slusher were both used in 1989 operations, with the slusher used to load ore from apex cuts; the compressor remains at Rollin (not in working condition); the slusher was sold to Mark Gavard during the WAZCO Lease Agreement, and removed from the property during the LCM LOA's life, or at its termination; the underground drill and drill steel is in storage in New Mexico.

11. Eight steel, brick-lined vats for cyanide leaching – purchased used for $12,000 ($1,500 each) from Don Moore, who had acquired surplus equipment at the Pima Mine southwest of Tucson, Arizona; 4 remain at Don Moore's; the other 4 were loaned to Norman Haber, thereafter lost by or stolen from Haber from an equipment yard of his, which loss constituted part of the debt from Haber to Aloisi referred to in Answer No. 10(3).

12. Six Denver flotation cells – used, worth $8,000, exchanged to Aloisi by Norman Haber in forgiveness of Haber debt to Aloisi, intended for Eddy Gulch as part of flotation circuit, exchanged to Don Moore in exchange for metallurgical testing and other services to Liberty Mining.

13. Two hoppers – bought used for $1,000 each from Benco (Steve Bennett), out of the dissolution of the Jefferson State operation; used in the ET Placer operation, moved to Rollin in 1989 and ready for use in mill set-up; they remain at Rollin.

14. Two grizzlies – bought used for $1,000 each from Benco (Steve Bennett), out of the dissolution of the Jefferson State operation; used in the ET Placer operation, moved to Rollin in

1989 and ready for use in mill set-up; they remain at Rollin.

15. Cedar Rapids Pitmaster and two conveyor belts, with portable screen and crusher jaws and rolls (mill pre-crush in advance of ball mill, 25 ton/hour capacity) – purchased for $26,000 used from Don Swanson; moved on-site in 1989 for mill set-up; still at Rollin.

16. Joy 185 (cfm) compressor – cost about $2,000; bought in 1982 by Aloisi and used in the Double Eagle and Jefferson State operations at the ET Placer pit; moved to Rollin in 1989 and used to power drilling and blasting in connection with approved 1989 access road construction and improvement; still being used near Eddy Gulch (at local lumber mill).

17. One pressure washer – bought new for $4,500; used in 1989-1991 road work, sold around 1993.

18. International Shop Truck (one and a half ton) – bought used for $2,500 from Webfoot of Medford in late 1980s; on-site during 1988-1989 operations; in storage in New Mexico now.

19. International flat-bed truck (two and a half ton) – bought used from Webfoot of Medford for $3,500; used on-site during operations; sold during 1990s for $500.

20. Boles Aero 32-foot trailer (for camp use) – bought for used $6,000, moved on-site in 1988-89, and used for employee housing in 1988-89 during operations; in storage in New Mexico.

21. Mack truck (the core drill was mounted on it) – bought used for $4,000 from Kendle Trucking in 1988; available on-site and used in drilling operations then (see Answer No. 10(8).

22. Portable Alaska sawmill – purchased used for $6,800 in 1988; used on-site to mill lumber from trees marked by the Forest Service for cutting in connection with approved 1988-1989 clearing, road construction and improvement; this lumber was used to built various cabins

and other structures at Rollin which were used in the 1989 operations. Salmon Mountain Forestry (Jim Villapiano) milled the cut trees, at a rate of $100 per 1,000 board feet, so in exchange for milling the 68,000 board feet of timber he acquired the sawmill for $6,800; Villapiano removed the sawmill from Eddy Gulch under those terms after completing the lumber milling work.

23. 1989 Ford 4 by 4 (three-quarter ton) pickup truck – purchased new for $25,000; this was the main supervisory work truck on site in 1989; Aloisi acquired and kept it after operations were shut down.

24. Fifth wheel Army "Dolley" (used as portable axles to move portable but unwheeled equipment) – purchased used in Talent, Oregon, for $500 in 1989 and used to move the Pitmaster; still at Rollin.

25. Northwest 41 dragline – bought for $7,500 used from Danny Chancellor for use in the milling circuit to load the Tri-R / Triple-Deck concentrator, and to clean out sedimentation ponds; sold to Christian Hardy in 1992 for $4,000.

26. Welder – bought used for $1,500 from Bill Barton in 1988, used in 1988-1990 for all welding uses; in storage in New Mexico now.

27. Campbell-Houser portable air compressor – bought new for $2,500 in 1989, used in operations; in storage in New Mexico now.

28. Powder magazine – bought used for $3,000 in 1982 for the Double Eagle placer operation; at Rollin during the operation in 1988-1989; sold to LCM during the LOA for $1,000, and removed from the property by LCM either during the LOA or upon its termination.

29. One 2200 Honda generator and one 3500 Honda generator -- $4,000 new, used in 1989 operations, and disposed of after operations ceased.