COPY

UNITED STATES COURT OF FEDERAL CASES

-oOo-

ALFRED ALOISI, et al.,

Plaintiffs,

vs. Case No. 95-650L

THE UNITED STATES,

Defendant.

______________________________/

-oOo-

DEPOSITION OF MARC ROSS WILLIAMS

Friday, October 11, 1996

-oOo-

Computer-Aided Transcription

Reported by
JOYCE A. FINK
CSR 1225
RPR 4605

Joyce A. Fink
Court Reporter
300 North Main Street, Yreka, California 96097
(916) 842-6633

Q. Could you look at document 69, please? Are you familiar with the document?
A. Yes, I am.
Q. Is this the Fish & Wildlife Service's biological opinion in response to your June 18th, consultation letter?
A. Yes, it is.
Q. Could I direct your attention to the second paragraph of the cover letter?
A. Okay.
Q. Near the -- well, it's the last sentence of the paragraph. Refers to augmenting documents and updates.
A. Uh-huh.
Q. Do you know if -- did you -- were you involved in providing any augmenting documents or updates to the Fish & Wildlife Service during this consultation?
A. I honestly don't remember.
Q. Do you recall having telephone conversations with the Fish & Wildlife Service during the consultation?
A. No.
Q. I could be even more specific and say: Were there any conversations about the consultation as pertained to the Liberty Mine proposal?

A. In the time frame immediately after or during this period, between June and July, I don't remember of any, no.

Q. When did you learn of the existence of this biological opinion; immediately, shortly thereafter, not for a long time?

A. Shortly thereafter.

Q. Would it have been your responsibility, then, to notify timber contractors or other staff that they could go forward with processing or issuing authorizations, now that this was back?

A. It would have been my responsibility to talk to other staff officers, yes.

Q. Okay.

A. This was -- I want to add that this was a watermark -- what's the word I want?

Q. Watershed?

A. Water -- thank you. This was a watershed. When this came back, it was general knowledge. Everyone was anticipating this.

Q. How would a document like this be distributed in the ranger district office. Would everyone have gotten a copy?

A. I don't know in this particular case, but usually the staff that is particularly involved would get a copy, the district ranger would probably

get a copy. And then I would have distributed it to timber staff, et cetera.

Q. The copy that's been put in the record indicates a fax slug line to Klamath National Forest. I assume it would have been faxed shortly thereafter to the Salmon River Ranger District. Do you recall getting it on the 26th or as soon as the forest had it?

A. Probably a day or two later,.

Q. Did you take any action with respect to the Liberty project after you received this and read it?

A. I did not personally contact Mr. Aloisi, no.

Q. Did you ask anyone else to do so?

A. I don't remember if I did. I don't remember at this particular time if I did.

Q. But you were aware when you received this -- I'll ask it differently. Excuse me.

When you received this, did you look to see if all of the project's proposed actions that you'd done a biological evaluation for were covered by this opinion?

A. Yes.

Q. So you knew, at the time you received this, that Liberty Mine was covered by this opinion?

A. Yes.