**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALFRED ALOISI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 95-650L |
| | ) | |
| v. | ) | Judge Lawrence S. Margolis |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' NEW**
**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Defendant, the United States, hereby responds to Plaintiffs' new proposed findings of uncontroverted fact, submitted within Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact ("Pls.' Resp. to Def.'s PFUF") (Doc. No. 128). Pursuant to Rule 56(h)(2), a party is permitted to propose new findings of uncontroverted fact, but must do so "in a separate document." Plaintiffs violate this requirement, and have instead merely imbedded new proposed findings into their responses. Defendant now responds to certain new matter asserted by Plaintiffs.

Defendant does not respond to all of the new matter interjected by Plaintiffs, as much of it is either wholly irrelevant or immaterial to the issues involved in these cross motions. Defendant responds now, not because Plaintiffs have raised genuine issues of material fact, but to show the contrary – that Plaintiffs make purported factual assertions without citing any support in the record (which is inconsistent with Rule 56(h)(1)), and they assert legal conclusions and expert opinions which are not grounded in fact. Accordingly, the Court should disregard such new matter asserted by Plaintiffs, which fails to raise a genuine dispute of any material fact.

For the Court's convenience, the paragraph numbers used below match the numbers of the paragraphs in Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact. Only those portions of Plaintiffs' new proposed finding prompting a response are quoted here.

**Paragraph No. 6:** In their response, Plaintiffs assert the following:

> (c) In addition, Plaintiffs submit that the August approval meant that the July 31, 1989 termination date in the June 1989 plan approval was moot and irrelevant, and Plaintiffs state that the August approval contained no expiration date, so the work was authorized until completed, without time limit.

**Response to Paragraph 6:** Plaintiffs' new proposed finding is offered with no citation, is based on speculation, and contains an improper legal conclusion regarding the alleged termination date of the June 1989 plan of operations, rather than a factual statement. This proposed finding should be disregarded.

**Paragraph No. 9:** In their response, Plaintiffs assert the following:

> Plaintiffs expected they would in fact produce gold in operating the gravity separation equipment then at the E T Placer pit in processing bulk samples they were approved to mine and process. Plaintiffs submit that the District Mineral Officer(s) involved knew and understood there would be gold production in gravity separation and required no 'details' of that production in order to understand and approve any plan of operations involving bulk sampling and the operation of gravity separation equipment.

**Response to Paragraph 9:** Plaintiffs' new proposed finding is offered with no citation and is based on speculation about what the District Mineral Officer(s) knew and understood. This proposed finding should be disregarded.

**Paragraph No. 10:** In their response, Plaintiffs assert the following:

> [Plaintiffs] would have been entitled to not comply with [any request by the District Ranger's for information beyond the end of the next year] under 36 C.F.R. § 228.4(d).

**Response to Paragraph 10:** Plaintiffs' new proposed finding is offered with no citation and is a legal conclusion, rather than a statement of fact. This proposed finding should be disregarded.

**Paragraph No. 11:** In their response, Plaintiffs assert the following:

> (d) Further, Plaintiffs had many well-formed alternatives and proposals for mine development; what was not definite, and what was not required by the Forest Service, was any more definite description of them for any purpose relevant to Liberty or the Forest Service in 1989.
>
> (e) Plaintiffs also affirmatively explain that the phrase in the block quotation emphasized by Defendant does not refer in any respect to uncertainty about volumes of ore deposits worth bulk testing – it was clear there was more ore available on the property to run through the gravity separation equipment for years. The uncertainties pertained to assuring the equipment was in working order, training labor, uncertainty about Forest Service supervision and permitting intentions, weather, etc., not the easy available of deposits worth running in bulk.

**Response to Paragraph 11:** Plaintiffs' new proposed findings are offered with no citation and contain legal conclusions, rather than statements of fact. These proposed findings should be disregarded.

**Paragraph No. 14:** In their response, Plaintiffs assert the following:

> To conform the Complaint filed in September 1995 to the available evidence, Plaintiffs if they filed an amended complaint now would plead and do here state in response to DPF No. 14:
>
> > The Forest Service's approval of the removal and test milling of "about 10,000 tons" of "Mountain Laurel and Klamath Ridge apex" mineral deposits would have grossed Liberty $216,600 and netted Liberty $88,100 in the 20 days of test milling operation.
>
> This return is calculated as follows: (a) 10,000 tons ÷ 500 tons/day (JA40, at 464, description; JA45, at 472, approval) through the existing gravity separation mill equipment approved for relocation and use at Usher Flat; (b) processing ore with a cutoff grade of 0.10 and an average grade of 0.152 opt (JA191, at 1577, Line 1, 1st column) in gravity concentration equipment with a recovery rate of 37 %

> (Line 1, column 4); (c) this processing would yield $21.66 per ton of gold at the $380/oz gold price then prevailing (Line 1, column 6); and (d) given mining costs of $12.85/ton (columns 1-3, at bottom, under "Klamath Apex Operating Costs (All tons)") and the operating capacity of the existing gravity separation equipment in excess of 500 tons per day.

**Response to Paragraph 14:** Plaintiffs' attempt to dispute their own allegation contained in their own Complaint should be rejected. Plaintiffs have not sought to amend their Complaint, and cannot do so here. In addition, the above statement is legal argument taken from Plaintiffs' Resp. to Def.'s Mot. Dismiss at 7-8, is based upon expert opinion and is not supported by the record. Whether Plaintiffs would have recovered any saleable gold from their bulk sampling program is speculative as they stated in their September 28, 1989 proposed plan (JA36 at 449), Phase 2 (test milling among other activities) was contingent upon positive results from Phase 1, which included bulk sampling, and Phase 3 (production) was contingent upon positive results from Phase 2. Moreover, Mr. Ferrero's calculations are based upon a hypothetical selective mining scenario. See JA191 at 1577; JA190 at 16-24 (Mr. Ferrero's discussion of the alternative scenarios and calculations used in the spreadsheets found in JA191). These proposed findings should, therefore, be disregarded.

**Paragraph No. 18:** Plaintiffs contend:

> By operation of law, namely, 5 U.S.C. § 558(c), which provides that a timely renewal request with respect to a license for an activity of a continuing nature extends the license past the date the agency otherwise may have prescribed for it to expire until such time as the agency duly acts on the timely request to extend the license, and Liberty filed a timely renewal request with respect to its approved plan of operations on March 11, 1991 (JA94).

**Response to Paragraph 18:** Plaintiffs are asserting legal argument and not a statement of fact. There is no dispute that the District Ranger, Mr. Lee, stated in his March 10, 1992 letter that Liberty Mining's approved plan of operations "terminated on March 31, 1991." See JSOF, ¶

72 (quoting JA111 at 1083). Plaintiffs' legal argument regarding the termination of its plan of operations should be disregarded.

**Caption E:** At page 11 of their Response to the Defendant's Proposed Uncontroverted Findings, Plaintiffs offer a lengthy response to a caption, including the following new proposed findings:

(a) Plaintiffs dispute that they caused any delay relevant to Plaintiffs' taking claim, as the agencies had all the data they needed in July 1990 to ask for and render the no jeopardy opinion hidden from Plaintiffs.

(b) Plaintiffs periodically considered changing their plans, as with the December 1990 conceptual plan discussed in JA90 that would have focused mine development at the east end of the property so as to be as far from the owl nest as possible, to try to see if any reconfiguration of their surface activities might break the impasse of no known owl guidance what could and could not be done on the ground.

**Response to Caption E:** Plaintiffs' response to a caption, rather than a proposed finding, is irrelevant and should be disregarded. In addition, Plaintiffs' new proposed findings are offered with no citation to the record and are based on speculation. These proposed findings should be disregarded.

**Paragraph No. 26:** In their response, Plaintiffs assert the following:

(a) Plaintiffs submit that the County letter is confusingly phrased, and has been misinterpreted by Defendant to require something that state law and county ordinance did not require. The County advised Mr. Ferrero then, and advised Mr. Aloisi in October 2007, that no county reclamation plan approval is required for operations solely on national forest lands. On such lands, the Forest Service is the lead agency. The County further advised that a County permit is required for operations on private lands (such as the Mountain Laurel parcel). If an operation involves both kinds of lands, the County requires a copy of the plan that applies to the federal lands as well, so that it can understand the whole operation and properly permit the private land portion of the operation. However the County's "approval" as to operations on public lands is pro forma, with the Forest Service remaining the lead permitting authority and the County not taking any action on federal lands inconsistent with the Forest Service lead. This is Liberty's understanding of JA-64 and the County's "reclamation agreement" requirement referred to in JA-64.

**Response to Paragraph 26**: Plaintiffs' new proposed findings are offered with no citation and contain legal conclusions, rather than statements of fact. Plaintiffs offer no support about what the County advised any individual in 2007, and such unattributed statements are inadmissible hearsay. Plaintiffs' unsupported statement about what steps the County would, or would not have taken, is speculative and unsupported. These proposed findings should be disregarded.

**Paragraph No. 27:** In their response, Plaintiffs assert the following:

> Plaintiffs submit that "several years" is ambiguous, and submit that the cited reference (JA190, at 1567) does not support the assertion. Plaintiffs submit that a competent and cooperative Forest Service could in 1990-92 have permitted a vat cyanide gold recovery mill circuit in less than two years from the time Liberty would have filed a plan of operations, or a supplement to an existing plan of operations, seeking Forest Service approval to build and operate it on national forest system lands.

**Response to Paragraph 27**: Plaintiffs' new proposed findings are offered with no citation and contain legal conclusions, rather than statements of fact. Plaintiffs' statements about what Plaintiffs would have done had certain events occurred are speculative. These proposed findings should be disregarded.

**Paragraph No. 29:** Plaintiffs cite JA190 at 1567 as stating:

> Plaintiffs had more than two years worth of apex and dump ore they intended to process through the gravity separation, or gravity - flotation mill that would be operated before Liberty would be approved to add a cyanide vat circuit to the mill facility, so the addition of such a circuit to Liberty's operation occurring plus-three years after Forest Service approval of a mining plan involving standard scale production and gravity-flotation milling operations fit Liberty's long-term plans. However, these long-term plans were all subordinate and background to getting word on the owl, namely, how the designation of the owl as a threatened species would prevent, constrain or otherwise alter any plans Liberty might otherwise have.

**Response to Paragraph No. 29:** This statement is based upon Mr. Ferrero's opinions

expressed in JA190, and is not a statement of fact. Other than Mr. Ferrero's opinion, Plaintiffs cite no evidence in the record supporting this statement, and it should be disregarded by the Court.

**Paragraph No. 33:** In their response, Plaintiffs state:

> The Forest Service's failure ever to respond to this [March 11, 1991] modification request mooted any offer by Liberty to supply further information in support of the modifications. Finally, Plaintiffs dispute that the Forest Service took no action of any kind on the approval renewal request. Plaintiffs incorporate by reference their Response No. 18(b) above, and state that the District Mineral Officer orally partially granted the approval renewal request by authorizing certain work otherwise prohibited by the Stop Work Order.

**Response to Paragraph No. 33:** Plaintiffs' statement is legal argument regarding whether it was required to submit the information it stated would be forthcoming in its March 11, 1991 proposed plan of operations, and not a statement of fact. Additionally, their assertion that their plan of operations was effectively orally extended by a District Mineral Officer also is legal argument and not a statement of fact. Plaintiffs' legal arguments should be disregarded. As noted above, in Defendant's response to Paragraph No. 18, there is no dispute that the District Ranger, Mr. Lee, stated in his March 10, 1992 letter that Liberty Mining's approved plan of operations "terminated on March 31, 1991." See JSOF, ¶ 72 (quoting JA111 at 1083).

**Paragraph No. 34:** Plaintiffs contend that Defendant's statement regarding the date upon which their plan of operations terminated, March 31, 1991, is a conclusion of law.

**Response to Paragraph 34:** As noted above, there is no dispute that the District Ranger, Mr. Lee, stated in his March 10, 1992 letter that Liberty Mining's approved plan of operations "terminated on March 31, 1991." See JSOF, ¶ 72 (quoting JA111 at 1083). Plaintiffs' legal arguments to the contrary should be disregarded.

**Paragraph No. 41:** In their response, Plaintiffs assert the following:

> With the possibility it would ever operate receding into the future, with the Forest Supervisor having mooted Liberty's appeal of the reinitiation of consultation on the owl on the April 1, 1992 plan of operations, with no schedule for the completion of the reinitiated consultation, with the agency taking the position that the same plan partially approved in 1989 was a new plan, having learned that the same agency officials processing this "new" plan of operations had hidden the existence of the July 1990 biological opinion from him for over a year and a half, and then withheld the opinion itself from him months more so that he had to seek a copy of it from the FWS, Liberty did not submit the information demanded by the Forest Service.

**Response to Paragraph 41:** Plaintiffs' lengthy response is offered with no citation to the record and is argument, rather than a statement of fact. The only relevant portion of this response is Plaintiffs' concession that they "did not submit the information demanded by the Forest Service." Their response should be treated as a concurrence with respect to this proposed finding of uncontroverted fact, but otherwise disregarded.

**Paragraph No. 49:** In their response, Plaintiffs assert the following:

> (a) Plaintiffs deny and dispute that Liberty ever proposed any activities within 0.5 mile of the nearest owl pair. Plaintiffs hereby withdraw their concurrence in JSOF-44, as upon further analysis of maps and documents of record Plaintiffs find JSOF-44 erroneous as a matter of fact.
>
> (b) Plaintiffs acknowledge that the charts in the June 1990 Biological Evaluation (JA-76, at 732), and the July 1990 Biological Opinion (JA-80, at 765-766), say Liberty did propose activities within the 0.5 mile radius. We believe those writings to be erroneous as a matter of fact.
>
> (c) Using the Forest Service map of the 0.7 and 1.3 mile radius circles (JA-118, at 1146), Plaintiffs submit that since October 1989 (with the submission of JA-40, the first plan reflecting the mitigation and owl avoidance agreed upon between Aloisi and Mark Williams) they have never proposed any activity within the 0.7 radius circle. The Klamath Mine area, and part of Usher Flat, are within the 1.3 mile radius line. The September 1989 all-phase plan (JA-36) proposed activities on or possibly just inside the 0.7 mile radius. These were mitigated out in the October all-phase plan, and have never been part of any subsequent Liberty plan,

including the April 1, 1992, restated plan of operations (JA-114).

**Response to Paragraph 49:** Plaintiffs' new proposed findings are based upon unsupported and unattributed conclusions as to whether their proposed activities were within or beyond the 0.5 mile radius of a spotted owl nest, and whether any proposed plan of operations mitigated the potential effects of their proposed project on the northern spotted owl. Such conclusory statements are opinions and legal conclusions, rather than any statement of fact, and should be disregarded. Significantly, Plaintiffs do not dispute that the Forest Service's June 1990 Biological Evaluation and the U.S. Fish and Wildlife Service's July 1990 Biological Opinion indicate that their operations were within the 0.5 mile radius of an owl pair.

Date: March 21, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

/s/ Bruce K. Trauben
BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
601 D Street, NW
Washington, D.C. 20004
(202) 305-0238 (phone)/(202) 305-0506 (fax)

WILLIAM J. SHAPIRO
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
501 I Street, Suite 9-700
Sacramento, CA 95814-2322

OF COUNSEL:
ROSE MIKSOVSKY
U.S. Department of Agriculture
Office of General Counsel
33 New Montgomery St., 17th Fl.
San Francisco, CA 94105-3170