**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALFRED ALOISI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | No. 95-650L |
| THE UNITED STATES, | ) | Judge Lawrence S. Margolis |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

**SUPPLEMENTAL STATEMENT OF FACTS AND BRIEF**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Pursuant to the Court's Order dated February 28, 2008 (Dkt. No. 126), Defendant hereby submits this Supplemental Statement of Facts and Brief in Support of Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment, filed February 6, 2008 (Dkt. No. 120). In its February 28, 2008 Order, the Court ordered the Parties to supplement their motion papers within twenty days from the date of the last deposition of Plaintiffs taken by Defendant. Defendant took 30(b)(6) depositions of Plaintiffs Energel, Inc. ("Energel") and Dynatech Corp. ("Dynatech") on April 24, 2008, and the deposition of Plaintiff James Kendle on April 28, 2008. Consequently, the Parties were to supplement their motion papers by May 19, 2008, which the Court extended to May 28, 2008. See Order, dated May 20, 2008 (Dkt. No. 135).

Based upon the discovery obtained during these depositions, it is evident that Plaintiffs did not preserve documents relating to their alleged investment in the mining operation. Consequently, Plaintiffs lack documentary evidence showing the extent of their investment, which is an important part of the liability analysis required to assess Plaintiffs' claims. Additionally, the depositions of Messrs. Kendle and Finkelstein highlight that Plaintiffs were unable to go forward with their project, not because of any alleged action or inaction by the federal government, but because Plaintiffs lacked sufficient funds.

**SUPPLEMENTAL STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. Myron Finkelstein, an accountant employed by Maste Consulting Group, Inc., retained the records of both Dynatech Corp. and Energel Inc., among other entities owned and/or operated by the late Plaintiff, Donald Goodman. See Donald C. Goodman Tr. at 7:5-18 (Ex. A, hereto); see also Myron Finkelstein Tr. at 22:24-23:14 (Ex. B, hereto); Affidavit of Myron Finkelstein, Jan. 11, 2008, ¶ 3 (Dkt. No. 114-2, attached hereto as Ex. C for the convenience of the Court) ("Finkelstein Aff.").[1/] Mr. Finkelstein had retained over 30 boxes of "business records that related to Mr. Goodman and his entities." Finkelstein Aff., ¶ 10.

2. Mr. Finkelstein did not keep the books for Liberty Mining, Inc., which had its own accountant located in Oregon. See Finkelstein Tr. at 28:25-29:13. Mr. Kendle confirmed that Liberty Mining had its own accountant, whose "first name was Clay, and his business was Valley Accounting in Central Point, Oregon."[2/] Kendle Tr. at 61:16-62:5, 73:24-74:8 (Ex. D, hereto).

3. In about June or July, 2007, after Plaintiffs failed to keep him apprised of this litigation, Mr. Finkelstein intentionally destroyed the business records of Plaintiffs Dynatech and Energel. See Finkelstein Tr. at 9:6-10, 22:24-24:7; see also Finkelstein Aff., ¶ 10.[3/]

---

[1/] The excerpts of deposition transcripts of a particular witness cited herein are compiled as one exhibit so, for example, all citations to the Donald C. Goodman Tr. are compiled as one exhibit, Ex. A.

[2/] Mr. Kendle could not recall Clay's last name. Kendle Tr. at 62:2-5. Based upon the name of the firm provided by Mr. Kendle, Valley Accounting, Defendant was able to locate Mr. Clay Ver Bryck Sr. formerly of Valley Accounting. See Declaration of Clay Ver Bryck Sr., ¶ 3 ("Ver Bryck Decl."; Ex. F, hereto). Previously, Mr. Aloisi erroneously testified that Liberty Mining's accountant was "Clay Vanderbrick." Oct. 31, 2007 Aloisi Tr. at 105:6-18 (attached at Ex. E).

[3/] Mr. Finkelstein produced one box of documents of Dynatech and Energel in response to a subpoena issued by Defendant, which included any responsive documents in the possession of the late Mr. Goodman's bookkeeper, Ms. Nancy Pinkham. See Finkelstein Tr. at 26:20-27:11.

4. Mr. Finkelstein also destroyed a report that he had prepared purportedly to show the funding Plaintiff Goodman had allegedly provided for the mining project at issue in this action. See Finkelstein Tr. at 24:12-25:6; see also Jan. 12, 1998 Aloisi Tr. at 30:21-31:4 (attached at Ex. E, hereto). Several years ago, in 1998, counsel for the United States inquired about Plaintiff Goodman's investment in the mining project. See Jan. 12, 1998 Aloisi Tr. at 30:21-25. According to Mr. Aloisi, Mr. Goodman was providing the funding since 1989. Id. at 30:21-31:6. Plaintiffs promised to submit Mr. Finkelstein's report to show Goodman's investment in the mining claims at issue. See Jan. 12, 1998 Aloisi Tr. at 30:21-32:1. Plaintiffs, however, never provided a copy of Mr. Finkelstein's report to the United States.

5. Plaintiffs also did not keep Mr. Ver Bryck Sr. apprised of this litigation. See Ver Bryck Sr. Decl., ¶ 4. Mr. Ver Bryck Sr. also destroyed any documents and electronic files he had in his possession relating to Liberty Mining and Energel, including, among other documents, balance sheets, check registers and bank statements. See Ver Bryck Decl., ¶ 5.

6. During the time period from about 1985 to 1988, Plaintiffs Messrs. Aloisi and Kendle estimated that several millions of dollars would be required to put their mining claims into production. See Kendle Tr. at 55:15-19.

7. In 1989, one estimate put the amount of money required to go into full-scale production at $6 million. See Kendle Tr. at 53:17-55:24 & Kendle Ex. 3 (attached at Ex. D).

8. Mr. Kendle's testimony that Plaintiffs needed several millions of dollars to go into production and Exhibit 3 to his deposition are both consistent with statements made by Plaintiff Goodman in letters dated February 4, 1992 and February 24, 1992. On February 4, 1992, Plaintiff Goodman stated that "for the past 6-12 months [Liberty Mining] [has] been for all intents and purposes closed down while the investors are trying to find additional capital to

continue mining operations." Feb. 4, 1992 Letter from Donald W. Goodman to Consolidated Credit Bureau, Inc. at FINKLE000430 (attached hereto at Ex. G). A few weeks later, Plaintiff Goodman wrote to David Davies seeking funds for the Eddy Gulch mining project, stating, "Total funding required - Four Million Dollars (4,000,000.00)."[4/] See February 24, 1992 letter from Donald Goodman to David Davies at FINKLE000769 (attached at Ex. G, hereto). Of the estimated $4 million, $2 million were needed to "finance the processing plant and operating costs to produce gold bars." Id. at FINKLE000770. Mr. Finkelstein confirmed seeking capital in the form of a "credit source" at this time and, in May 1992, Mr. Goodman went into Chapter 11 bankruptcy with two of his companies, including Dynatech. See Finkelstein Tr. at 47:18-49:22.

## SUPPLEMENTAL ARGUMENT

### A. Plaintiffs Cannot Show Frustration of Any Reasonable Investment-Backed Expectations Because Plaintiffs' Accountants Intentionally Destroyed Relevant Evidence

In its motion to dismiss, the United States argues that Plaintiffs cannot show frustration of any reasonable investment-backed expectations, as required under Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978), because of the pre-existing regulatory regime, including regulations governing mining within National Forests and protecting the northern spotted owl. See Def.'s Mem. Supp. Mot. Dismiss Alternatively Summ. J. ("Def.'s Opening Br.") at 36-39; Def.'s Reply Supp. Mot. Dismiss Alternatively Summ. J. ("Def.'s Reply Br.") at 12-13. After the Rule 30(b)(6) depositions of Dynatech and Energel, it is now plain that Plaintiffs cannot show that the government frustrated any investment-backed expectations

[4/] In his February 24, 1992 letter, Mr. Goodman addressed it to "David Davis," but the addressee's correct last name is Davies. See Finkelstein Tr. 51:3-8.

because they also cannot show the quantum of their investment in the mining claims as both Mr. Finkelstein and Mr. Ver Bryck Sr. intentionally destroyed the most relevant evidence.

The Court of Appeals for the Federal Circuit recently concluded that

> the reasonable expectations prong [of the Penn Central analysis] also requires that the expectations be investment backed, and in this regard further analysis is required. The first step of the analysis is to determine the actual investment that the general and limited partners made in the property.

Cienega Gardens v. United States, 503 F.3d 1266, 1289 (Fed. Cir. 2007). Plaintiffs, however, did not preserve evidence of their actual investment and, therefore, do not have documentary proof to satisfy this important step of the Penn Central analysis of the Plaintiffs' reasonable investment-backed expectations.

The accountant for both Dynatech and Energel, Myron Finkelstein and his employer, Maste Consulting Group, retained the corporate records of both entities. See Supplemental Statement of Material Facts Not in Dispute, ¶ 1, supra (hereinafter, "SSOF"). At one time, Mr. Finkelstein and his company held more then 30 boxes of business records relating to Plaintiff Goodman and his entities. SSOF, ¶ 1. Mr. Finkelstein prepared a summary report of Plaintiffs' investment in the mining claims, which Plaintiffs intended to submit to Defendant to show the amount of their investment. See SSOF, ¶ 4. However, Plaintiffs failed to keep Mr. Finkelstein apprised of the status of this litigation, so Mr. Finkelstein intentionally destroyed his summary report, along with Dynatech's and Energel's business records, during the pendency of this litigation. See SSOF, ¶¶ 3 & 4; see also Finkelstein Tr. at 22:24-25:6. Moreover, Mr. Ver Bryck Sr. intentionally destroyed business records of Liberty Mining and Energel in 2003, because Plaintiffs failed to keep him apprised of this litigation. See SSOF, ¶¶ 4, 5. Plaintiffs thus did not preserve the most relevant evidence purportedly relating to their investment in the mining

claims.[5/]

Because Plaintiffs did not retain evidence to show the quantum of their investment, they do not have sufficient objective, documentary proof to establish that the government frustrated any reasonable investment-backed expectations. Moreover, where a party fails to preserve evidence, it is appropriate for the Court to presume that the evidence destroyed was favorable to the opposing party. See United Medical Supply Co., Inc. v. United States, 77 Fed. Cl. 257, 263, 268 (2007) (noting that the oldest remedy for spoliation of evidence is "an 'adverse inference,' under which the finder of fact may infer that the destroyed evidence would have been favorable to the opposing side," and the aggrieved party need not show bad faith) (citation omitted).[6/] For this reason, and the reasons stated in Defendant's Opening and Reply Briefs, the Court should conclude that the government did not frustrate any reasonable investment-backed expectations.

**B. Plaintiffs' Inability to Obtain Sufficient Funds for Their Proposed Mining Operations Is Fatal to Their Case**

In its Opening and Reply Briefs, Defendant argues that Plaintiffs cannot show economic harm due to any alleged action or inaction by the federal government, because their claim of lost

---

[5/] In addition to Defendant's inquiry regarding Mr. Goodman's investment in Liberty Mining during Mr. Aloisi's January 12, 1998 deposition (see SSOF, ¶ 4, supra), Defendant also sought documents relating to Plaintiffs' alleged incurred costs in its Second Set of Interrogatories and Requests for Production of Documents to Plaintiffs dated July 31, 2007 at 7-8 ("Defendant's Second Set of Discovery") (Ex. H, hereto). Defendant's second set of discovery requests incorporated by reference its instructions and definitions from Defendant's First Set, including the instruction that its discovery sought documents "in the possession of plaintiffs' attorneys . . . accountants . . . or other professional persons or experts . . . ." See Defendant's Second Set of Discovery at 1; see also Defendant's First Set Interrogs. Request Prod. Documents to Pls. at 1 (Ex. I, hereto). Defendant also subpoenaed such documents from Mr. Finkelstein, directly. See Subpoena Duces Tecum to Myron Finkelstein (Ex. J, hereto).

[6/] The Court of Appeals for the Federal Circuit, however, apparently has not yet addressed whether the negligent destruction of records creates an adverse inference. See Jandreau v. Nicholson, 492 F.3d 1372, 1375-76 (Fed. Cir. 2007).

profits is speculative. See Def.'s Opening Br. at 33-36; Def.'s Reply Br. at 10-12. As discussed in Defendant's prior briefs, Plaintiffs' claim of lost profits is speculative because Plaintiffs' mining operations were in the exploration and development phase, were not approved to enter into the production phase of operations, and were not close to realizing any profit. See Def.'s Opening Br. at 33-36; see also Pls.' Mem. Supp. Mot. Summ. J. at 35 (arguing that the Plaintiffs suffered economic harm "in the lost profit and income from the property"). Indeed, as discussed more thoroughly in Defendant's Opening and Reply Briefs, Plaintiffs failed to submit to the Forest Service a sufficiently detailed plan of operations, during the time period relevant to their takings claim. See, e.g., Def.'s Opening Br. at 22-27.

It is now clear that Plaintiffs also were not prepared to go into production because they did not have sufficient funds. Plaintiff Kendle testified that he and Mr. Aloisi estimated during the time period of 1985-1988, they needed several millions of dollars to go into production. See SSOF, ¶ 6. In 1989, one estimate, consistent with Messrs. Aloisi's and Kendle's assessment, concluded that as much as $6 million would be necessary to scale up their operations for production. See SSOF, ¶ 7. And in early 1992, Plaintiff Goodman estimated that $4 million were needed for the project, including $2 million to "finance the processing plant and operating costs to produce gold bars." See SSOF, ¶ 8. Mr. Goodman admitted in February 1992, that Liberty Mining's operations were on hold while the investors were searching for funding. Id.

Accordingly, Plaintiffs did not have sufficient funds to enter into the production phase of operations and produce gold during the time of the alleged taking. Consequently, Plaintiffs did not suffer economic harm that supports the finding of a taking under Penn Central. Indeed, it now is clear that Plaintiffs' mining operation did not go forward due to Plaintiffs' own lack of funding and not because of any alleged action or inaction by the Forest Service. See SSOF, ¶ 8.

## CONCLUSION

For the reasons stated herein, and in Defendant's Opening and Reply Briefs, the Court should grant Defendant's motion and dismiss this action.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Bruce K. Trauben
BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238 Phone
(202) 305-0267/0506 Fax

WILLIAM J. SHAPIRO
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
501 I Street
Sacramento, CA 95814
(916) 930-2207

OF COUNSEL:
Rose Miksovsky, Esq.
Office of General Counsel
U.S. Department of Agriculture
33 New Montgomery St., 17th Fl.
San Francisco, CA 94105-3170
(415) 744-3158

Dated: May 28, 2008